Mrs. Levenson, good morning, and I inquire where you were at 9.30 when you came in. Yes, Your Honor, I was stuck in traffic in Arlington. I left my house at 8.30 to be here hopefully by 9.15, which is the normal time period, and I don't know if there was an accident. I honestly don't know what the cause was, but I was backed up for over an hour coming from Arlington to here. Did you call the clerk's office? I did not. Were you able to call the clerk's office? I suppose I could have. You had a cell phone? I did, yes. I suggest to you that next time you get stuck in traffic, you call the clerk's office. I apologize for that. Let's proceed with your contention on appeal in this case. My subject today is the statutory interpretation of the duty absorption statute under the anti-dumping law of the United States. This statute requires the Department of Commerce to determine in the second and fourth administrative reviews of an anti-dumping order whether anti-dumping duties have been absorbed by a foreign producer or exporter. Your position seems to be that their entire absorption investigation was ultra-virus because the precondition of affiliatedness was missing. That is correct. Now, help me understand the facts here. Some arm of Agro-Dutch packaged and exported mushrooms, I guess from India, right? That's correct. Now, some other arm of Agro-Dutch was in New York or somewhere here in the United States and served as the importer and the records so indicate. Well, I don't know if I would say another arm. Agro-Dutch itself served as the importer. Well, that's what I'm trying to understand. If Agro-Dutch was the importer of record, when we look at that record, what does it tell us as to the name of the importing entity? Agro-Dutch Industries Limited, which is the Indian company, has no presence in the United States whatsoever. There is not an Agro-Dutch USA that was serving as importer. Okay, well then, why aren't we governed by definition D, which says, for purposes of this regime, among those things that will be considered related are employer and employee, are not the Agro-Dutch people who did the importing employees of Agro-Dutch Limited? No, Your Honor. There's no employees in the United States. The Agro-Dutch Limited is a corporation located in India. That is the corporation that exported, and that is the corporation that acted as importer record. There is no presence in the United States. The same people who exported. Under U.S. Customs Law, you do not have to be a United States corporation in order to act as importer record. A foreign corporation can act as importer record if it poses a purpose. Well, whoever it was who acted on behalf of the company to do the importing, aren't they necessarily employees of the company? Your Honor, it is a customs broker who actually does the importing, but you're correct that the 7501 must be, which is the import document, must be signed by a representative of Agro-Dutch. It's the same person who exported. The exact same person. So, you would be suggesting that this person is affiliated to itself. No, no. D would suggest that the company is the employer, and that official is the employee of said company. Yes, but the statute says that it has to be sold through an importer. The importer has to be affiliated with the foreign producer. The importer is the foreign producer. So, you cannot be affiliated with yourself. Well, I thought you told me that the importer was a particular official who, although not in the U.S., signs the necessary papers. Well, I'm considering that officer to be the importer, and I'm suggesting to you that that officer is necessarily an employee of the company. And, Your Honor, who would you suggest, therefore, that the exporter was? The company. No, the company. The same person, the same official signed all the documents exporting from India. It's the exact same company official. He sits in Chandigarh, India. He doesn't sit in the United States. So, in my mind, there's a basic prerequisite that is very clear on the statute that says you have to have someone in the United States. It says sold in the United States through an importer who is affiliated. Now, the importer record is agri-Dutch. It's not the employee. It's agri-Dutch. Agri-Dutch is not affiliated with the foreign producer who is agri-Dutch. The same sort of construction arises in another context involving reimbursement. It is also illegal under the anti-dumping statute for a foreign producer to reimburse its U.S. importer for anti-dumping duties. Therefore, if agri-Dutch in India had a U.S. corporation, let's say, called Agri-Dutch USA, and agri-Dutch India was paying the dumping duties, that would potentially be in violation of the reimbursement statute. However, the actual facts are that agri-Dutch India is both the exporter and the importer, and the Department of Commerce has found that in that context you cannot have reimbursement for the very reason I'm suggesting here, that a corporation cannot reimburse itself. Are you contesting that in the Sunset Review, the five-year review, that the Department cannot take into account the effect of your – and I'll use the term of our absorption here – of the duties? No. I'm saying that the statute certainly requires the ITC, the International Trade Commission, and the Department of Commerce to take into account whether there is absorption. What I'm saying here is there cannot be any absorption because the basic premise of the statute does not exist. Okay. So let's not use the word absorption. In the five-year Sunset Review, are you taking the position that the Department may not take into account the fact that the importer and the exporter are identical, and therefore the anti-dumping duties may have been paid by the exporter, and therefore in reviewing whether or not the anti-dumping duties should be extended, that that fact could be taken into account? I am saying that as the statute is drafted, no, it could not in the context of absorption. Now, in the context of reimbursement, the court and the Department of Commerce has agreed with this interpretation. Okay. So you're not just challenging the review of this issue at the two- and four-year period. You're also challenging the review of this issue at the five-year period. Well, I would say technically I'm not because we haven't yet gotten to that point. There hasn't yet been a five-year period. But when we got there, yes, at that point it would be appropriate to challenge it. But what I challenge at this point is the Department of Commerce's determination that a party can be affiliated to itself. I think it flies in the face of 1677-33, which defines affiliated persons. But counsel, why didn't you raise this issue below? Why shouldn't we kick this for exhaustion principles? Okay. Well, the court below did entertain this issue. And the reason is there's no factual issues in dispute here. And there is case law that says when you have a purely legal issue, that that issue can be entertained on appeal even if it was not raised below. Now, there are no factual issues that would have been – that would have probably been deferred to the Department of Commerce as the fact finder in this case. Those issues are not before this court. The only issue before this court is one of statutory interpretation. Of what? The word affiliated? No. More than the word affiliated, Your Honor, the clause that you look into the absorption if the subject merchandise is sold in the United States through an importer who is affiliated. Oh, hold on, counsel. That's not what the statute says. The statute doesn't say you look at it if these things are met. The statute says you shall look at it if these conditions are met. It doesn't – the statute does not determine the circumstances under which commerce can choose to analyze duty absorption. It only articulates the statute – the standards under which commerce must look at duty absorption. Isn't that right? Doesn't the statute say that? Congress – the administering authority shall determine whether anti-dumping duties have been absorbed. It doesn't preclude – I don't see anything in this statute that precludes commerce from looking at anti-dumping duty absorption in other contexts. It just says they have to do it here. So I don't think that your characterization of the statute is accurate. I understand what you're saying. I think that the statute is what instructs the Department of Commerce to look at it, as you say, requires them to look at it. If I understand what you're saying correctly, you're saying that they would have the liberty to look at it regardless of the statute. Is that what you're saying? I mean, if it's reasonable for them to – if the statute is silent, right, we've got to give them a Chevron deference, and so we have to look at is there articulation of the circumstances under which they would do so reasonable in light of the statute and the purpose of the statute and all of that. And my position would be the statute's not silent. So the statute very clearly confines this analysis to determining – How? How does the statute preclude them from looking at it in other circumstances? So that's what you started to say, but that's just not the way I read the statute. Okay. Wouldn't you, counsel, be relying on – and I don't know if it's F-A-G Italia or vague Italia – that where the statute is silent, no authority is given to the agency to undertake a review? Well, not only when the statute is silent, but the other prerequisite, it has to be – the Department of Commerce has to be requested to buy the petition. In this case, they were requested to undertake this review. Yes. Yes. But yes, I would agree. I don't think – But, counsel, doesn't that case say where the statute is silent, no authority to undertake a review, but it doesn't say where the – when Commerce has authority to undertake a review, where that's undisputed, they have authority to undertake a review. That case does not, as I read it, preclude Commerce from determining what issues are appropriate for them to analyze in the course of undertaking that review, namely duty absorption. Your Honor, I don't agree with that because the whole concept of duty absorption arose in 1995. My case was just whether – my question was just whether this case precludes what I'm suggesting because I think that Judge Cope might have suggested that, or you might have suggested that based on her question. And I don't read the case that way, and I want to make sure if I'm misunderstanding the precedent of that case, then I'd like you to point me to it. Well, you know, my point would be that the statute was enacted as part of the Uruguay run in 1995. Before that, the Department of Commerce never looked at the nature of statute absorption. It just never arose. This was a new development, and it is only pursuant to the statute that the Department of Commerce has looked at duty absorption. And the statute is very clear in saying you have to have a new reporter who's affiliated with a foreign producer. Well, that's not true because they've chosen to look at it in the 5-year sunset review, which allows them to look at any evidence they might deem relevant, and they've chosen to take it into account in some circumstances there. So it's not true that they're only doing it at the 2- and the 4-year point, right? Well, I think they have a different analysis in the sunset review. They're not looking at duty absorption. But they're taking that – They're looking at what the impact of the duty absorption is at that point. They're taking duty absorption into account in their assessment. That is correct. And the statute doesn't tell them specifically to do so. Nonetheless, they have done so. No, I believe the statute does. It mentions duty absorption, calls it out by name? Well, it says the administrative authority shall notify the commission of its findings regarding duty absorption for the commission to consider in conducting a review. So that, to me, is statutory authority for the ITC to consider the duty absorption in the sunset review. Can you think of a reason why a single entity from a policy standpoint ought not to – I might agree. Maybe – I certainly understand your position. There's a loophole. That's basically what it comes down to. 1675 has a loophole. Maybe we need Congress to act to fix it. But from a policy standpoint, can you think of anything – because I didn't see anything in the briefing that would suggest why when an importer – when the importer-exporter is the same entity, why there shouldn't be coverage in general. I understand your position why 1675 doesn't provide it. But is there any policy reason that would suggest it shouldn't exist? Honestly, I don't have a policy reason. My argument really does – I appreciate the honesty. Yeah. It really rests on what the statute says. And we're supposed to follow what Congress says. And if Congress deems it necessary to amend the statute, then so be it. And that's my basic argument. Look at the plain language of the statute. Don't say the Congress didn't know how to enact a provision that says if the exporter is the importer or they're affiliated, they certainly would have known how to do that. Do you want to reserve any rebuttal time? Maybe three minutes. Well, you're down to a minute and a half already. Okay. Well, then I will conclude my remarks. Thank you. All right. Thank you. Ms. Burke? May it please the Court. Could you explain for me first where Mr. Schroeder is? Mr. Schroeder is unavailable, Your Honor. I believe he's preparing for trial. Am I correct that you had nothing to do yourself with preparing the brief? That's correct, Your Honor. He was the sole preparer of the brief? I believe so, but it was obviously internally reviewed, but he is the consular record. And he's the author? That's correct. And he's not on trial, but he's preparing for trial? Well, honestly, Your Honor, I don't know the exact answer to that. I know that he is unavailable. Do you know when he became unavailable? No. When were you assigned to make the argument? A few weeks ago. Very well. Please proceed. The most important thing to remember here is that we do not have the benefit of Congress's analysis on the duty of absorption question because Agro-Dutch failed to exhaust its administrative remedies. Well, what facts would need to be found? As I understand it from Ms. Levinson, there's a document that shows that so-and-so in India was the exporter and the same gentleman was the importer. So we have two documents that settle the facts of who the exporter was and who the importer was. So then we just have to apply the definitions in the statute. So where is there a factual dispute or where is there a fact finding that would be needed? Well, the way that Agro-Dutch raised this issue to Congress was as a factual issue. Agro-Dutch never raised this legal question before Congress. I understand that, but I'm not asking about exhaustion. I'm asking about the purported need to have fact finding, and I'm saying what specific fact would need to be found. We have the document. There's no dispute. Well, if, for example, the court were to determine that this is a Chevron 2 question, then we would need the Department of Commerce's expertise both to evaluate the statute and give its interpretation, and depending on the answer, to apply the facts of the case to the original question as Agro-Dutch articulated it. And really what's gone on here is that Agro-Dutch is— I don't understand. Did there be any factual content to what you've just said? What facts would be found if this were returned to Commerce that would be relevant to the contention made on appeal by your opponent? If Agro-Dutch is incorrect, then we get to the merits of the question, which is what was proposed to Commerce in the first instance, and that is obviously a factual question. And in addition, the question of Commerce's past practice would also come up, which is exactly the situation— I don't understand her appeal to include a disagreement with the Commerce determination. What I understand her appeal to concern is the assertion that the entire absorption investigation and hence its results were illicit, were ultra-virus, were unauthorized by law. That sounds like a pure question of law. Were they authorized or not? Well, I agree that it's a legal question. I disagree that a legal question is the same thing as a pure question of law. And as we cited in our brief—well, let me step back. This Court hasn't actually addressed that particular question in the context of a decision from— Well, whether we've addressed it or not has nothing to do with whether fact-finding is needed. Where is the need for any fact-finding? If Agrojudge is incorrect and if the Court determines the legal question in the Department of Commerce's favor— Then we affirm and the appeal is over. Well, if, for example, at the Court of International Trade level, the Court— well, I suppose the Court did affirm Commerce's decision. It certainly did. And we would affirm the trade court's decision if we reject your opponent's argument. And then the case would be over. But if Agrojudge continued to challenge the merits of the decision, the question is not just whether an exporter can be affiliated with itself. Assuming that it can be affiliated with itself, there's still a question of whether duty absorption actually occurred, which is the question that Agrojudge— I don't understand the second issue to have been raised in this appeal at all. The second issue has not been raised in this appeal at all. Well, then it's not before us. Well, it's not before you precisely because Agrojudge has picked and chosen exactly what it wishes to raise— They're allowed to do that. Well, we don't believe that they are, Your Honor, because the statute requires— Of course they are. An appellant is always allowed to pick what issue it wants to raise on appeal. It's not required to pick every issue that might be of interest to the opponent or might potentially be raisable. It's allowed to raise issue A out of the array A to D. We disagree, Your Honor. What's your authority for disagreeing? This 28 U.S.C. 2637 requires exhaustion where appropriate. And this Court has stated that all arguments must be raised before the agency. And if an appellant takes a new angle at a new argument and has not raised that new angle before the agency, the appellant has failed to exhaust its administrative remedies. You might be right if we were talking about the merits. But her entire case is that everything the Commerce Department did from day one in this absorption investigation was unauthorized, unlawful, and therefore null and void. That sounds like a pure legal question with no factual content at all. That is the argument that Agrojudge makes now. That is not the argument that Agrojudge made before Commerce. So what? They're allowed to change arguments. But if this is indeed a Chevron 2 question, Commerce is statutorily obligated and authorized to have the first crack at that interpretation, not the Court of International Trade and not this Court. And the whole reason why the exhaustion… So am I understanding your argument right? You're basically going the line of inquiry that I brought up earlier, which is, if I'm understanding it right, if I say this statute says the circumstances under which Commerce shall consider anti-dumping duty absorption issues, it doesn't necessarily preclude them from doing it in other circumstances, and therefore when you keep saying if this raises a Chevron 2 issue, you're talking about that, right? Is that what I'm understanding you to be talking about? Yes. The statute may be silent on Commerce's authority to do it otherwise apart from this statute section. Right, which is… And therefore we ought to give it to Commerce and let them in the first instance do it so that we can determine whether it's reasonable or not to the extent that we determine the statute's silent about it. That's correct, Your Honor, which hopefully we articulated in our brief. What section of the code authorizes an absorption investigation in the absence of a request? Well, you have to read a couple of statutory provisions in conjunction, I think, to make this make sense. Mr. Schroeder argues repeatedly that there's general authority to do absorption inquiries, but he never cites a specific statute that provides such authority. He says it should be inferred by the general goals and structure of the overall statute. I didn't find that a very convincing argument. I think it's fairly clear that Commerce is only authorized to do those things that the Congress expressly authorizes it to do. So to find some kind of inferrable inherent general authority doesn't sound like a very plausible position. If you have a particular statute, you better cite it. Okay, well, let me take the court through our analysis. 1675.8.4, as we've already discussed, allows or requires Commerce to perform a duty absorption inquiry if certain circumstances are met. And that inquiry is directly linked to the Sunset Review. Whoa, whoa, whoa, wait a minute. The inquiry under this section of a Year 4 review is directly linked to a Year 5 Sunset Review? Right. By what? The statute says 1675.8.4 says the administering authority, Commerce, shall notify the ITC of its findings for the ITC to consider in conducting a review under subsection C of this section. Sure. If it finds under this section that there has been absorption, it should tell the ITC. Correct. But that doesn't give it separate authority to go out and do an absorption inquiry any time it wants, whether or not there's been a request. Right, but I think we need to keep moving through the statute to see where I'm going with it. Because then if you go to section 1675.c, the five-year review portion, the statute specifically references the question whether dumping is likely to occur, and then jumps the Department of Commerce to section 1675.a. 1675.a, subsection C, 2, then permits Commerce, if good cause is shown, to consider pretty much any other practice. In a five-year review. That's correct. A sunset review. But this isn't a sunset review. The only thing before us is a four-year non-sunset review. That's correct. But as this court in F.A.G. articulated, it left open the possibility that section 1675.a, subsection C, 2, allows Commerce the general authority to consider duty absorption as a general matter. Well, so what? For a court to say there's an open question about something doesn't give you the answer to the question. It seems like this appeal requires us to answer the question. Well, it does require the court to answer the question. However, the court does not have the benefit of the Department of Commerce's first thoughts on this matter. Where do you get the idea that the Department of Commerce is entitled to give its first thoughts any time there's a legal issue in a case? Because the principles of exhaustion work that way. And frankly, that's the way all legal questions get up to this court. Legal questions are raised before the Department of Commerce all the time. And the Department of Commerce opines upon them. But this isn't just a legal question. This is a jurisdictional question. This is a question about whether there was lawful authority to do anything. And the position of the other side is no authority because the only section that grants authority doesn't apply to the facts of this case because none of the definitions of affiliated persons fit the facts of this case. As we cited in our brief, the D.C. Circuit in Beauvin stated that when you have an agency that is authorized by statute to interpret the statute, the pure question of law exception may very well not apply. And hopefully we've articulated that, if not in our brief, right now. But the C.I.T. found it did apply here, right? And the C.I.T. has expressed authority to consider exhaustion. And our case law indicates the circumstances under which exhaustion ought to apply. And is that a question of law or fact? The standard of review under which this court reviews the Court of International Trade's application of the exhaustion principle is a little bit unclear. And I'm well aware that our brief doesn't include a discussion of that. The court appears to have handled that question. But the C.I.T., you do agree with me, the C.I.T. addressed all this below, right? That's correct. But the C.I.T. also, in addressing the exact same question in Forrestall, came out with the opposite answer, that this is not a pure question of law because, first of all, commerce's past practice is involved. And although the court didn't articulate this part, if this turns out to be a Chevron 2 question, then the Department of Commerce's decision needs to be deferred to. So what is the standard that I ought to be applying? I mean, we have an exhaustion determination from the C.I.T., which is within their authority to make. They said this falls within the pure question of law. What's the standard of review? You're asking me to find exhaustion wasn't satisfied. Well, I've got to know what standard of review to apply. From my reading of this court's exhaustion cases, both within the C.I.T. context and outside the C.I.T. context, I would propose that the court apply the same de novo standard that it applies to all of the C.I.T. reviews. Even though an abusive discretion standard would make more sense, as the court explained in the V.A. context in Maggott, even though this is a question... It's within the C.I.T.'s discretion. It's explicitly within their discretion to consider. So how can we say de novo review of something that is their discretion? Well, I understand the court's concern, but in all of the cases that I've been able to evaluate from this court, the court has actually not applied an abusive discretion standard. Okay. You only have a few seconds left. I have your idea. One other thing. Korrestal did not involve the pure question of law at the C.I.T. level. By the way, they didn't raise that until here for the first time on appeal. The futility exception was... What was at issue there? Well, in Korrestal, the appellant didn't raise it at all. But you started off by saying to me the C.I.T. decided the pure question of law with regard to exhaustion differently. It was not even raised at the C.I.T. level. So how could they have decided it differently there? In the last footnote in Korrestal, Judge Rastani did mention agro-Dutch and did say that the pure question... But she mentioned agro-Dutch. How is that a holding in Korrestal about whether or not the pure question of law has been held by the C.I.T. Well, Your Honor, if I characterize it as a holding, I apologize because it wasn't a footnote and it was an alternative. With regard to a different case. But it did specifically say that the duty absorption question, which is the same duty absorption question in Korrestal as an agro-Dutch, was not a pure question of law. And if you disagree, I can certainly submit further briefing, but that's my understanding of Korrestal. Ms. Burke, if the government's view is that the trade court judge erred in rejecting the failure to exhaust position of the government, why didn't the government cross-appeal? Well, Your Honor, the government is, well, any party is permitted to request affirmance on different grounds, which is what we did. Yeah, but you're attacking the ruling. You're saying he made an error, a reversible error, when he didn't require exhaustion. I don't understand why the government should be allowed to take that position in the absence of a cross-appeal. Because the result is still affirmance, and it's affirmance on a different ground. There's not much more I can say. But you're asking us to find a reversible error in a judgment. Well, as I explained to you— Normally, you can't ask the court to find a reversible error unless you either are the appellant or you cross-appeal. Well, it depends on how you view the court's standard of review. If the court applies the standard of review de novo, which I believe that it does, based upon my reading of consolidated bearings and other applications of the CIT's exhaustion statute, then the question of reversible error is a little bit different. It's really just a question of the court's de novo review, not necessarily— I wouldn't think it would make any difference what the standard of review is. If you want the court to hold that the trial court made a reversible error, you should be in the shoes of the appellant or cross-appellant. Otherwise, you shouldn't be heard to allege reversible error. However, what we're appealing is the judgment, and the judgment is the Court of International Trade's affirmance of the Department of Commerce's decision. We're not necessarily required to appeal if we're just asking for affirmance on a different ground. Yeah, but if the affirmance on the different ground requires us to find a legal error in the court below, I doubt that you can raise that without appealing or cross-appealing. Is the court's question assuming that the exhaustion application is a legal error? It doesn't make any difference whether it's a legal error, a factual error, a discretionary error, or no error. If your view is that the court below made a reversible error, you should be appealing. Well, Your Honor, we defend Commerce's determination, regardless of whether we agree with the manner in which the Court of International Trade arrives at its affirmance. We're reviewing the judgment of the trade court, as you said a minute ago. Exactly, the judgment, and the judgment is that the decision of the Department of Commerce is affirmed. The rationale is obviously important because you want to be aware of what the Court of International Trade's rationale is, but it's not necessary. Well, I suppose the Justice Department can take any risk that they want to take and will have to live or die with the consequences. But I would suggest to you that if you want to take this kind of a position, you would be on far stronger ground if you filed a cross-appeal in the next case where it arises. All right, Ms. Levenson, you have a brief amount of rebuttal time, a minute and a half. Well, since my time is so brief, I just want to conclude, really, by saying that I, that Agriduch believes that the Department of Commerce is bound by the statute 675A4 in making a duty of absorption determination, and it does not have this inherent authority that the government has proposed to undertake such an analysis on its own terms and not in accordance with the plain language of the statute. I want to thank you for your very good questions. Give me a pause for thought. All right, we thank both counsel. We'll take Agriduch Industries under advisement.